OPINION
Appellant Jill Mumma appeals the trial court's adoption of the magistrate's property division recommendations following the dissolution of Jill's marriage to Steven Mumma, appellee herein. In her sole assignment of error, she contends the trial court erred in finding that certain trust funds received by her during the marriage were handled in such a way that they lost their identity as separate property. Steven has also asserted a cross appeal consisting of one assignment of error, and claims that the trial court failed to divide the farm equipment and its corresponding debt equally. We find neither Jill's nor Steven's assignments of error to be meritorious, and affirm the judgment of the trial court.
Jill and Steven were married on June 5, 1966. Their marriage was dissolved on October 3, 1994, and a division of their property was made pursuant to the trial court's incorporation of their September 2, 1994, separation agreement. On February 15, 1995, however, Jill filed a "motion to set aside property division elements of dissolution" for reasons that are irrelevant to the current appeal. The trial court construed Jill's motion to be one pursuant to Civ.R. 60(B), and ordered the separation agreement detailing division of the parties' property stayed and a new trial on the property division matter.
A hearing was held before a magistrate in August of 1997, during which evidence was taken concerning, inter alia, monies received by Jill during the marriage from the Robert Bumgardner Trust (hereinafter "the trust") and division of the parties' farm equipment and its corresponding debt. The trust was set up by Jill's parents apparently for the purpose of benefiting Jill and her sister in lieu of an interest in their family's farm. The magistrate found that the income from the trust was initially Jill's separate property, but concluded that because she had deposited her benefit checks into a joint checking account, then used the money to pay on marital debts, it had been transmuted into marital property. Therefore, although all funds from the trust disbursed after the parties' dissolution were Jill's separate property, those distributed prior to the dissolution were marital property and Jill was not entitled to credit for those contributions in the property division. The magistrate also found that the parties' farm equipment was marital property, and that the equipment should be sold and the proceeds divided between Jill and Steven. Any post-dissolution debt incurred on the farm equipment, however, was deemed to be Steven's responsibility.
Both parties objected to the magistrate's recommendations on several grounds. For purposes of the present appeal and cross appeal, however, only those objections having to do with the trust and the farm equipment and debt are relevant. In her objections, Jill claimed the magistrate erred in finding that the trust funds distributed prior to the dissolution had been transmuted into marital property. She argued that the funds were traceable, and therefore retained their identity as her separate property. In his pertinent objection, Steven claimed the magistrate erred in denying him credit for half of the payments made on the "farm debt" since the dissolution on grounds that the "farm debt" was a marital obligation. The trial court overruled Jill's objection relating to the trust and Steven's objection concerning the "farm debt" in an entry filed on March 19, 1999. Jill's timely notice of appeal and Steven's notice of cross appeal, also timely, followed.
Before addressing the merits of the errors assigned, we note that the Ohio Supreme Court has recently encapsulated the appropriate standard of review respecting the division of property as follows:
 A trial court has broad discretion in making divisions of property in domestic cases. Berish v. Berish (1982), 69 Ohio St.2d 318
. A trial court's decision will be upheld absent an abuse of discretion. Holcomb v. Holcomb (1989), 44 Ohio St.3d 128; Martin v. Martin (1985), 18 Ohio St.3d 292, 294-295. "Abuse of discretion" is more than an error of law or judgment; it implies that the court acted in an unreasonable, arbitrary, or unconscionable fashion. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. If there is some competent, credible evidence to support the trial court's decision, there is no abuse of discretion. Ross v. Ross (1980), 64 Ohio St.2d 203. (Parallel cites omitted.)
Middendorf v. Middendorf (1998), 82 Ohio St.3d 397, 401. This in mind, we begin our analysis of the errors assigned in Jill's appeal and Steven's cross appeal.
Jill's assignment of error is set forth as follows:
 The court errored [sic] in finding that the funds received by Appellant, through the Robert Bumgardner Trust during the course of her marriage did not qualify as separate property in contravention of Ohio Revised Code Section 3105.171. By also not finding that the property was non-marital property/separate property, the court abused its discretion as well as the decision being against the manifest wright [sic] of the evidence.
Jill contends, and Steven does not dispute, that the trust funds distributed during the marriage were initially Jill's separate property. The trial court found that by depositing those funds into a joint checking account then using them to pay on the marital debt, the nature of the trust money was transmuted into marital property. We observe that although an appellate court generally reviews a trial court's division of property under an abuse of discretion standard as set forth above, "[a]ppellate review of a trial court's classification of property as marital or separate is based upon whether the determination is supported by the manifest weight of the evidence." James v. James (1995),101 Ohio App.3d 668, 684. See also Marcum v. Marcum (1996),116 Ohio App.3d 606, 613; Geuy v. Geuy (May 1, 1998), Champaign App. No. 97-CA-22, unreported. But see Ricketts v. Ricketts (Feb. 12, 1999), Clark App. No. 97-CA-82, unreported (applying an abuse of discretion standard of review to trial court's determination that certain property was spouse's separate property) and Biggers v.Biggers (Feb. 20, 1998), Greene App. No. 97-CA-14, unreported (same).
R.C. § 3105.171(A)(6)(b) provides that "[t]he commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, except when the separate property is not traceable." The party seeking to have real or personal property declared his or her separate property has the burden of proving its separate nature by a preponderance of the evidence. Peck v. Peck (1994), 96 Ohio App.3d 731,734. If the property is statutorily defined as separate, however, and no commingling has occurred, the burden is with the party who claims it is marital property to prove transmutation. See Esterline v. Esterline (Aug. 15, 1997), Clark App. No. 96-CA-0126, unreported. In the present case, Jill's trust money falls within R.C. § 3105.171(A)(6)(a)(vii) because it was a gift from her parents to her alone, and Steven concedes as much. Because the money was commingled with marital funds, however, Jill must prove by a preponderance of the evidence that the funds are traceable and consequently remain her separate property. Peck, supra.
We have very recently stated the following with regard to the type of proof necessary for a party to successfully trace an asset to their separate property:
 Several courts have found documentary evidence is necessary in order to trace an asset back to nonmarital property. See Zeefe v. Zeefe (1998), 125 Ohio App.3d 600, 614-15; Williams v. Williams (1996), 116 Ohio App.3d 320, 327; Peck, supra. In Zeefe, the Appellant pointed to several withdraws [sic] from premarital accounts just prior to the purchase of the home to prove that the down payment was separate property. Zeefe, supra. The trial court found no evidence demonstrating these funds were used as part of the purchase price of the home, and thus were not traceable. * * *
Similarly, in Peck, the trial court found the residence to be marital property even though Appellee conceded that Appellant's premarital funds were used in its purchase. Peck, supra. Since neither party presented evidence tracing the financial history of the asset, the court held it must be classified as marital property. Id.; see also Woolum v. Woolum (June 28, 1993), Clermont App. No. CA92-12-116, unreported; Wells v. Wells (May 8, 1989), Butler App. No. CA88-04-050, unreported. Karg v. Karg
(Feb. 25, 2000), Greene App. No. 99-CA-91, unreported.
In the present case, Jill submitted only her own testimony as to the route and eventual destination of her trust fund distributions. Of particular interest is the following exchange which took place on cross-examination:
 When you were married to Mr. Mumma what you did with the money from the Bumgardner Trust was you put it in your joint checking account, did you not?
Yes.
* * *
You put it in —
The check automatically went into our checking account.
Went into your joint checking account?
 Yeah, from there we wrote a check so we would have a receipt for Mrs. Sheeley.[1]
 Sure, out of your joint checking account you paid all of the obligations of the marriage?
Yeah.
 Okay. So there was — and other monies went into the joint checking account, it wasn't just the Bumgardner trust money that went into the joint checking account?
No, it was —
Monies from your employment, from Steve's employment —
His snow plowing business, the farm.
Okay. They all went into the joint checking account?
Yes.
 And then they were, the were commingled so that they didn't have a separate identity, correct?
Yes.
And then things were paid out of there as needed?
Yes, that's what I thought a marriage was supposed to be.
 Okay. And that was indeed the way you did it because that's what you thought marriage ought to be?
Yeah.
Tr. at 42-44. No documentary evidence was submitted to show deposit of the trust distributions into the Mummas' joint checking account, nor was any documentary evidence introduced showing a payment from the joint checking account to Mrs. Sheeley. Moreover, there was no evidence, other than Jill's testimony, that the last one or two distributions during the marriage were paid toward the couple's line of credit loan. In fact, the only documentary evidence relating to the trust funds produced at the hearing was an undated amortization schedule relating to the past and future distributions from the trust. The magistrate concluded that this evidence was, for purposes of tracing the trust funds to prove their separate nature, inconclusive and insufficient. We agree.
Furthermore, we note that the passage from the transcript cited above establishes that Jill's intent in handling the trust distributions the way she did was to make it a part of the marital estate because, as she testified, "that's what I thought a marriage was supposed to be." That she has subsequently begun to view her decision as a mistake does not operate to deprive the funds of their acquired marital nature.
For the foregoing reasons, we find neither the magistrate's conclusion, nor the trial court's adoption thereof, that Jill failed to adequately trace the trust funds thereby proving that they remained her separate property after being commingled with marital funds and applied toward marital debt, was against the manifest weight of the evidence. Jill's assignment of error is without merit, and it is accordingly overruled.
In his cross appeal, Steven submits the following assignment of error:
 The trial court failed to adequately divide the farm equipment and the debt associated with it equally.
Before addressing the merits of Steven's assignment of error, we note that his brief is single spaced and consequently not in conformance with App.R. 19(A). Though Loc.App.R. 2.2(B) permits us to return such briefs to their authors for reformation, we decline to do so in this particular case since neither the record nor the briefs of the parties are excessive in length. Care should be taken in the future, however, to assure that briefs submitted to this court are in compliance with the local rules and the Rules of Appellate Practice.
In his sole cross assignment of error, Steven claims the trial court erred in dividing the farm equipment and its corresponding debt unequally. We note, however, that Steven's only objection to the magistrate's recommendations that can possibly be construed as relating to the farm equipment and the debt associated with it is his seventh, which he set forth in his June 15, 1998, objections as follows: "Steven Mumma should be given a credit of one-half of the amount of the payments he has made on the farm debt since the dissolution since this was clearly a marital debt." As stated, this objection has nothing to do with the farm equipment or its corresponding debt. Generally, "farm debt" would refer to debt owed on the farm property itself, not the equipment used to work the farm. Since the record makes it clear that no debt remained on the farmland on the date of the Mummas' dissolution, however, we will construe Steven's objection to be a reference to the debt owed on the farm equipment. As he did not object to the magistrate's division of the farm equipment and makes no argument in his brief that the court's order to sell the equipment and divide the proceeds equally was error, we need only determine whether Steven's contention that the court erred in allocating the debt on the farm equipment has merit. We conclude it does not.
R.C. § 3105.171(C)(1) requires equal division of marital property unless the court finds an equal division would be inequitable, in which case the court must divide the marital property equitably rather than equally. Steven claims that the court erred by failing to equally divide the debt on the farm equipment between him and Jill. He does not contend that the division of the debt as set forth by the trial court was inequitable, however. As noted above, the law does not require the court to divide marital debts and assets equally in all cases. Where an equal division is inequitable, the court must make an equitable division of the parties' debts and assets. As Steven has made no argument that the court's division of the farm equipment debt was inequitable, we find his claim meritless.
In his second argument, which is contained in one sentence in his brief, Steven claims the trial court failed to make written findings of fact that support the determination that the marital property has been equitably divided as required by R.C. § 3105.171(G). The purpose of requiring written findings of fact is to provide a basis for review by an appellate court. Kaechelev. Kaechele (1988), 35 Ohio St.3d 93, 97; Gibson v. Gibson (1993),87 Ohio App.3d 426, 433. Moreover, it has been held that a trial court's adoption of a magistrate's decision and factual findings is "more than sufficient to inform * * * [an appellate] court as to the basis of the decision * * *." Zebrasky v. Zebrasky (June 24, 1999), Mahoning App. No. 97-CA-48, unreported. In fact, we have previously noted that "where the basis for a trial court's decision is apparent from the record, no abuse of discretion will be found [even] in the absence of a trial court's explanation of its reasoning." Thomas v. Thomas (Dec. 31, 1998), Clark App. No. 97-CA-128, unreported, citing Kaechele, supra at 97; Carman v.Carman (1996), 109 Ohio App.3d 698, 704; and Delong v. Delong
(Mar. 29, 1996), Clark App. No. 95-CA-59, unreported. We find that the magistrate's recommendations, comprising twelve of its twenty-page opinion and adopted by the trial court, provides an adequate basis for appellate review. In his recommendations, the magistrate reasoned that because Steven had exclusive use of the farm equipment after the dissolution, he should not be credited for the post-dissolution payments he made on the farm equipment debt. We cannot say the magistrate's decision was arbitrary, unconscionable, or unreasonable, and therefore find no error in either his division of the farm equipment debt or the trial court's adoption of his recommendation that Steven be responsible for any post-dissolution debt on the equipment. Moreover, the trial court ordered that the parties be equally responsible for any pre-dissolution debt on the equipment that remained outstanding. Thus, we conclude the farm equipment debt has been equitably divided and sufficiently supported by the magistrate's findings of fact and the trial court's adoption thereof.
Accordingly, Steven's cross assignment of error is overruled.
Having found no merit to either Jill's or Steven's respective assignments of error, we affirm the judgment of the trial court.
GRADY, P.J. and FAIN, J., concur.
[1] The Mummas purchased their farm on a land contract, the terms of which required them to make two $5,000 payments per year to Mrs. Sheeley, the seller of the farm. Jill testified that her trust fund payments were used to make one of the payments during the years she received distributions from the trust until the land contract was paid in full one or two years prior to the parties' dissolution.