JOURNAL ENTRY AND OPINION
Plaintiff-appellant/cross-appellee Marta E. Meister appeals from the decree of divorce terminating her marriage to defendant-appellee/cross-appellant Robert M. Meister.
Marta Meister assigns the following errors for review:
 I. THE TRIAL COURT ERRED IN AWARDING THE MARITAL HOME AND ALL APPRECIATION ON SEPARATE PROPERTY TO THE HUSBAND CONTRARY TO THE MANDATE OF REVISED CODE S3105.171.
 II. THE TRIAL COURT ERRED IN AWARDING THE ENTIRE PENN MUTUAL ANNUITY TO THE HUSBAND WHEN ITS PURCHASE PRICE WAS NOT TRACED TO SEPARATE PROPERTY AS REQUIRED BY REVISED CODE S3105.171(6)(b).
 III. THE COURT'S CHILD SUPPORT ORDER IS CONTRARY TO OHIO REVISED CODE S3113.215 AND IS UNCONSCIONABLE.
 IV. THE TRIAL COURT'S SPOUSAL SUPPORT AWARD IS CONTRARY TO REVISED CODE S3105.18 AND IS UNCONSCIONABLE.
 V. THE TRIAL COURT ERRED IN NOT AWARDING ANY LEGAL FEES PENDENTE LITE.
 VI. THE TRIAL COURT ERRED IN AWARDING ONLY HALF OF THE WIFE'S LEGAL FEES AND EXPENSES.
 VII. THE TRIAL COURT ERRED IN ADMITTING AN EXPERT WITNESS REPORT INTO EVIDENCE, CONTRARY TO EVIDENCE RULES 702, 802, 901, 1002 AND 1003, CUYAHOGA COUNTY COMMON PLEAS COURT — GENERAL DIVISION LOCAL RULE 21.1, AND CUYAHOGA COUNTY COMMON PLEAS COURT — DOMESTIC RELATIONS DIVISION RULE 12(B).
Finding the third assignment of error to have merit, the judgment of the trial court is affirmed in part, reversed in part, and remanded.
 I.
On March 25, 1983, Robert and Marta Meister married shortly after Robert Meister obtained a divorce from his first wife in the Dominican Republic. The property settlement and financial issues from his first marriage were not resolved until December 20, 1984. Robert Meister had two daughters with his first wife. Four children were born as issue of the marriage of Robert and Marta Meister: Claudia (DOB September 1, 1983), Justin (DOB March 11, 1985), Liane (DOB February 9, 1987), and Joel (DOB August 19, 1988). All the children received private schooling.
At the time of the marriage, Robert Meister worked as a veterinarian with his own practice. Marta Meister had earned three graduate degrees. She received masters degrees in history and library science in the 1970s. In 1980, Marta Meister earned her masters degree in business management. Marta Meister worked as a librarian at the time she and Robert met. In the fall of 1982, Marta Meister began to work for Robert Meister at his animal hospital as an office manager. After Claudia's birth, Marta Meister worked part-time. She received an annual compensation of twenty-five thousand dollars ($25,000.00).
In his settlement with his first wife, Robert Meister received the marital home, rental property located on adjacent property, some undeveloped acreage, his veterinary practice, the building and property where the animal hospital was located, two annuities, a brokerage account, three life insurance policies, and various other accounts and stocks. None of the property was encumbered by a mortgage at the time of his marriage to Marta Meister. In return for the marital home, Robert Meister paid his first wife one hundred seventy-five thousand dollars ($175,000.00).
Robert and Marta Meister renovated the marital home and moved in with their family in 1988. At the time of their divorce, the marital residence was worth two hundred eighty thousand dollars ($280,000.00). The rental property was valued at one hundred eighteen thousand dollars ($118,000.00). Over the pendency of the marriage, more rent was collected from the rental property than was expended in taxes and repairs.
Robert Meister's (DOB May 5, 1930) health declined during the marriage. In 1992, Robert Meister had heart bypass surgery. He needed dialysis for kidney problems which developed as a result of his heart condition. Robert Meister received a kidney transplant in 1994. In 1996, he had a stroke and decided to sell his veterinary practice. Appellant sold his veterinary practice and animal hospital for seven hundred fifty thousand dollars ($750,000.00). Robert Meister received two hundred thousand dollars ($200,000.00) as a downpayment. The rest was financed using a fifteen-year installment contract. Robert Meister receives four thousand six hundred fifty-six dollars ($4,656.00) per month from the sale of the practice and seven hundred sixty-nine dollars ($769.00) monthly for the animal hospital real estate. Robert Meister used some of the money he received from the downpayment to purchase a condominium in Virginia for one of his daughters from his first marriage. She does not pay rent to Robert Meister. Robert Meister suffered a heart attack in 1998.
On February 14, 1997, Marta Meister filed a complaint for divorce. On May 21, 1998, the trial court granted the divorce but bifurcated the remaining issues for a hearing. Hearings commenced before the trial court on February 23, 1999, and concluded on July 9, 1999. The trial court awarded Robert Meister the marital home, the rental property, the undeveloped acreage, the Virginia condominium, and the proceeds from the sale of the animal hospital and practice as his separate property. Marta Meister was given the right to remain in the marital residence for eighteen (18) months from October 1, 1999 to March 31, 2001. Robert Meister was responsible for the real estate taxes and homeowner's insurance during this period.
The trial court ordered Robert Meister to pay one thousand one hundred fifty-six dollars ($1,156.00) a month in child support. This figure was computed after a nine hundred sixty dollar ($960.00) social security payment received by the children due to their father's disability was offset dollar for dollar from the child support obligation. Robert Meister is to pay for Claudia's private schooling though twelfth grade and for the three younger children through eighth grade. Robert Meister is to pay for the children's health insurance. Custody of the children was awarded to Marta Meister.
Marta Meister was awarded spousal support of one thousand five hundred dollars ($1,500.00) per month for three (3) years. She was awarded six hundred sixty-six thousand twenty-five dollars ($666,025.00) in assets in the property award. The trial court ordered Robert Meister to pay forty-five thousand dollars ($45,000.00) in attorney's fees.
 II.
In her first assignment of error, Marta Meister contends the trial court abused its discretion by determining the marital home was Robert Meister's separate property and awarding him the appreciation on other separate properties. Marta Meister asserts the appreciation was not passive and that they purchased the home with marital funds.
A spouse's separate property should be awarded to that spouse. R.C.3105.171(D). Appellate review of a trial court's classification of property as marital or separate will be reversed only if it is against the manifest weight of the evidence. James v. James (1995),101 Ohio App.3d 668, 684. When assessing a challenge to the manifest weight of the evidence, the appellate court weighs the evidence and all reasonable inferences, considers the credibility of the witnesses, and determines whether, in resolving conflicts in the evidence, the fact-finder clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. State v. Thompkins (1997), 78 Ohio St.3d 380, 387. If the evidence is susceptible of more than one construction, a reviewing court must give it the interpretation which is consistent with the verdict and judgment and most favorable to sustaining the verdict and judgment. Karches v. Cincinnati (1988),38 Ohio St.3d 12. The party seeking to have real or personal property declared his or her separate property has the burden of proving its separate nature by a preponderance of the evidence. Peck v. Peck (1994),96 Ohio App.3d 731.
When either spouse makes a contribution, whether it is monetary, due to labor, or in-kind, that causes an increase in the value of separate property, the increase in the value is deemed marital property. Middendorf v. Middendorf (1998), 82 Ohio St.3d 397, 400. Appreciation as a result of an increase in the fair market value of separate property due to its location or inflation is considered passive income. Munroe v. Munroe (1997), 119 Ohio App.3d 530.
Marta Meister first asserts that the marital home should have been classified as entirely marital property. Marta Meister argues the property was purchased with marital funds. Robert Meister received the property from his first wife in that divorce settlement, granted after his marriage to Marta Meister. Robert Meister paid his first wife one hundred seventy-five thousand dollars ($175,000.00) in return for the property. Robert Meister testified he sold several assets he received in his first divorce settlement and used the proceeds to pay the amount owed his former wife for the marital residence. Marta Meister averred the money came from an account at Dollar Bank. The account was in her name but Robert Meister deposited the money in the account. The trial court is best suited to determine the credibility of the witnesses. Robert Meister traced the different non-marital assets used to satisfy the payment to his first wife. The trial court did not abuse its discretion by determining the home was Robert Meister's separate property.
Marta Meister next disputes the award of the rental property to Robert Meister as his separate property. Marta Meister asserts significant marital funds were expended to repair the rental home during the marriage. Marta Meister would be entitled to receive one-half of the increase in value that is attributable to marital funds and either spouse's labor. R.C. 3105.171(A)(3)(a)(iii). See also Baker v. Baker (1992), 83 Ohio App.3d 700, 704.
In Ricketts v. Ricketts (Feb. 12, 1999), Clark App. No. 97 CA 82, the Second District Court of Appeals upheld the trial court's determination that certain rental property remained the separate property of the wife. In reaching this decision, the court partly relied upon the fact that rental income had exceeded expenses on the properties, showing that marital income was not used for the expenses of upkeep.
Similarly, in the instant case, Robert Meister showed the rental property generated more income than expenses cost for the property. Because the property produced enough income to cover any repair or upkeep costs, no marital funds were used to cause the appreciation of the property.
Marta Meister contends the West Park Animal Hospital real estate was not Robert Meister's separate property because both parties worked there and improved the real estate. Robert Meister testified about improvements to the property. He stated that routine maintenance such as painting, replacing carpeting, and some carpentry work was done. Regular maintenance is not the sort of labor qualifying under R.C.3105.171(A)(3)(a)(iii) that causes appreciation to separate property and converts such appreciation into marital property. See Cyrus v. Cyrus (Nov. 29, 1995), Lorain App. No. 95CA006040, unreported. Marta Meister testified new floors, wallpaper, and cabinets were installed in 1992. The trial court is best suited to resolving conflicts in the testimony.
Marta Meister lastly asserts the appreciation of the West Park Animal Hospital Veterinary Practice was marital property and not Robert Meister's separate property. Robert Meister testified the value of the practice declined during his marriage to Marta Meister. The trial court was free to believe and give credence to this evidence.
Marta Meister's first assignment of error is overruled.
 III.
In her second assignment of error, Marta Meister argues the trial court erred by awarding the entire Penn Mutual annuity to Robert Meister as his separate property. Marta Meister asserts Robert Meister failed to trace the purchase of the annuity to his separate property.
R.C. 3105.171(A)(6)(b) provides:
 The commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, except when the separate property is not traceable.
Robert Meister testified he was awarded a National Investors Life annuity in his first divorce settlement. The annuity was changed to another company which went bankrupt. Metropolitan Life then purchased the annuity. That annuity was cashed in and used to purchase another annuity with Penn Mutual.
On cross-examination, Marta Meister admitted she knew the Metropolitan Life annuity was converted into the Penn Mutual annuity. Marta Meister also testified she was aware the National Investors Life annuity Robert Meister received in his first divorce settlement became the Metropolitan Life annuity, which in turn became the Penn Mutual annuity.
There was some competent, credible evidence before the trial court supporting its determination that the Penn Mutual annuity was Robert Meister's separate property.
Marta Meister's second assignment of error is overruled.
 IV.
Marta Meister's third assignment of error challenges the child support order. Marta Meister contends the trial court did not include all of Robert Meister's income when calculating the amount of child support.
In consideration of child support appeals, this court is guided by an abuse of discretion standard. Pauly v. Pauly (1997), 80 Ohio St.3d 386. The amount of child support to be paid by the obligor is based upon the obligor's income. R.C. 3113.215(A)(1). Income for the purposes of determining child support is defined in R.C. 3113.215(A)(1) as the gross income of the parent who is employed to full capacity. Gross income is defined in R.C. 3113.215(A)(2) as:
 [T]he total of all earned and unearned income from all sources during a calendar year, whether or not the income is taxable, and includes . . . rents, dividends . . . pensions, interest, trust income, annuities, social security benefits . . . and all other sources of income.
The definition of income is intended to be both broad and flexible. Murray v. Murray (1999), 128 Ohio App.3d 662.
Marta Meister asserts the installment payments on the sale of Robert Meister's veterinary practice and from the sale of the West Park Animal Hospital real estate are income to Robert Meister and are income under the child support statutes. Generally, the sale of assets is a conversion of assets into cash and is not income realized by that parent. However, the sale of assets, other than in the ordinary course of business, produces income from the profit received on the item but not the initial investment which may be recouped upon the sale. Geiger v. Geiger (1994),96 Ohio App.3d 630 . Therefore, any profit Robert Meister received from the sale of his practice and the real estate associated with it should be included as income for the purposes of calculating child support.
Marta Meister also disputes the trial court's action of setting off the children's social security payments, dollar for dollar, from the amount of child support owed by Robert Meister. In Williams v. Williams (2000),88 Ohio St.3d 441, the court held at syllabus:
 A disabled parent is entitled to a full credit in his or her child support obligation for Social Security payments received by a minor child due to the parent's disability.
Under Williams, the trial court performed the correct calculation with regard to the social security payments.
The trial court credited Robert Meister for eight thousand dollars ($8,000.00) in expenses for the children's health insurance. Medical and dental expenses shall be considered when computing child support. See R.C. 3113.215(B)(5)(f); Caldwell v. Caldwell (Feb. 1, 1996), Cuyahoga App. No. 67920, unreported. However, no evidence regarding the actual cost of the children's health insurance was admitted at trial. The trial court had no evidence before it upon which to base this credit.
Marta Meister argues income from various pensions and annuities should be included when calculating Robert Meister's child support obligation. These payments would be considered income when received by Robert Meister. The payments would not be included in his income until that time.
The child support calculation worksheet attached to the journal entry shows the trial court used a figure of sixty-nine thousand, nine hundred eighty-six dollars ($69,986.00) as Robert Meister's income. There is no indication as to how the trial court arrived at this figure either in the worksheet or the trial court's journal entry. The trial court stated some rental income from the condominium was included in the child support calculation but the exact amount is unknown. Because the basis for the calculation of Robert Meister's income cannot be discerned from the child support worksheet or journal entry, the issue of amount of child support to be paid is remanded to the trial court for further proceedings.
Marta Meister's third assignment of error is well-taken.
 V.
In her fourth assignment of error, Marta Meister challenges the award of spousal support. The trial court ordered Robert Meister pay Marta Meister one thousand five hundred dollars ($1,500.00) per month for a period of three years. Marta Meister argues this award was unconscionable because she has no significant income while her former husband's income is considerable. Marta Meister contends she should not have to seek employment since she cares for the couple's four children and her education is outdated. Marta Meister asserts her needs and those of the children require a larger support order than that entered by the trial court.
A trial court is given broad discretion in determining whether an award of spousal support is appropriate. Holcomb v. Holcomb (1989),44 Ohio St.3d 128, 130. In applying this standard, a reviewing court is not free to substitute its judgment for that of the trial court. Bowen v. Bowen (1999), 132 Ohio App.3d 616. The trial court is to consider the following statutory factors:
R.C. 3105.18(C) provides:
 (C)(1) In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:
 (a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;
(b) The relative earning abilities of the parties.
 (c) The ages and the physical, mental, and emotional conditions of the parties;
(d) The retirement benefits of the parties;
(e) The duration of the marriage;
 (f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;
 (g) The standard of living of the parties established during the marriage;
 (h) The relative extent of education of the parties;
 (i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
 (j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;
 (k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;
 (l) The tax consequences, for each party, of an award of spousal support;
 (m) The lost income production capacity of either party that resulted from that party's marital responsibilities;
 (n) Any other factor that the court expressly finds to be relevant and equitable.
A trial court must set forth a factual basis or rationale which supports an award of spousal support. Kaechele v. Kaechele (1988), 35 Ohio St.3d 93, at paragraph two of the syllabus. The trial court need not list and comment upon each factor of R.C. 3105.18, but must only consider the factors. McConnell v. McConnell (Feb. 3, 2000), Cuyahoga App. No. 74974, unreported. The trial court is given wide latitude in determining the amount of spousal support to be awarded, so long as the trial court properly considers the statutory factors of R.C. 3105.18. Bechtol v. Bechtol (1990), 49 Ohio St.3d 21, 24. The trial court must decide what support is appropriate and reasonable. Bowen, supra.
The general presumption in Ohio is that an award of spousal support, if appropriate, will terminate within a reasonable time and upon a date certain. Kunkle v. Kunkle (1990), 51 Ohio St.3d 64, syllabus. A termination date should be utilized in cases where both parties have the potential to be self-supporting. Id.
Neither party was employed at the time of trial. Robert Meister retired due to significant health problems. Marta Meister worked as the office manager at Robert Meister's veterinary practice during the fifteen-year marriage. She holds three graduate degrees, although the degrees were awarded at least twenty years ago. Marta Meister testified she might be able to obtain a position with the library system, earning eleven dollars an hour. The trial court imputed eighteen thousand dollars ($18,000.00) a year income to Marta Meister based upon her testimony. Both parties have significant retirement benefits. All four of the couple's children are now in their teens, no longer necessitating Marta Meister's constant presence in the home. The parties' lifestyle was relatively modest during the marriage, given their income. Both received significant assets in the property division.
The trial court took into account that Marta Meister would need time to update her skills before seeking employment.
Based upon the above factors, Marta Meister did not show the award of spousal support by the trial court was unreasonable. The trial court did not abuse its discretion when making its spousal support award.
Marta Meister's fourth assignment of error lacks merit.
 VI.
In her fifth assignment of error, Marta Meister argues the trial court erred by not awarding her any legal fees pendente lite. Marta Meister claims she made repeated requests for such fees in various motions during the pendency of this case.
R.C. 3105.18(H) provides in pertinent part:
 In divorce or legal separation proceedings, the court may award reasonable attorney's fees to either party at any stage of the proceedings . . . if it determines that the other party has the ability to pay the attorney's fees that the court awards. When the court determines whether to award reasonable attorney's fees to any party pursuant to this division, it shall determine whether either party will be prevented from fully litigating that party's rights and adequately protecting that party's interests if it does not award reasonable attorney's fees.
In Oatey v. Oatey (1992), 83 Ohio App.3d 251, this court noted R.C.3105.18(H) permits a trial court to order the payment of reasonable attorney's fees upon proper application during the course of the proceedings. Marta Meister relies upon Hornung v. Hornung (Apr. 22, 1999), Cuyahoga App. Nos. 73659 and 73667, unreported, as authority to support her contention she was entitled to the award of interim fees. In that case, the appellant filed four motions for fees, all but the last filed prior to the commencement of trial.
The four motions Marta Meister mentions in her brief as requests for attorney's fees show that only one was actually a request for interim attorney's fees. On June 22, 1998, Marta Meister filed Motion No. 12491, requesting attorney's fees and expenses in connection with her motion to compel filed the same day. Marta Meister's Motion No. 21401, filed October 23, 1998, only asks for attorney's fees and expenses incurred as a result of her contempt motion. Motion No. 252266, filed December 11, 1998, asked the trial court to reconsider its recusal judgment entry. Marta Meister did not ask for any attorney's fees in the motion. The first motion in which she asked for attorney's fees and expenses was in Motion No. 30913, filed on March 26, 1999, after trial commenced.
Marta Meister filed her complaint for divorce on February 14, 1997. Her first, and only, request for attorney's fees pendente lite was not made until over two years had passed and trial had begun. Marta Meister's protracted delay in making any motion for interim attorney's fees undercut her argument she would be prevented from fully litigating the case or protecting her rights without an award of fees.
Marta Meister's fifth assignment of error is overruled.
 VII.
Marta Meister's sixth assignment of error challenges the trial court's award of half of the attorney's fees she requested. Marta Meister contends she provided the trial court with an itemized statement reflecting the services rendered by her attorney during the lengthy litigation. Marta Meister asserts the disparity in incomes between herself and Robert Meister required that her former husband be ordered to pay the full amount of her attorney's fees.
The payment of attorney's fees primarily is the function of the party who retains the attorney. Farley v. Farley (1994), 97 Ohio App.3d 351. An award of attorney's fees by the trial court under R.C. 3105.18(H) will not be reversed absent an abuse of discretion. Rand v. Rand (1985),18 Ohio St.3d 356, 359. When awarding attorney's fees, the trial court must consider the same factors considered when making an award of spousal support. Williams v. Williams (1996), 116 Ohio App.3d 320, 328. Two important considerations are the financial ability of the payor spouse and whether a failure to award reasonable attorney's fees will prevent either party from fully litigating his rights and adequately protecting his interest. Id. This court's review of an award of attorney's fees is limited to determining whether (1) the factual considerations upon which the award was based are supported by the manifest weight of the evidence, or (2) the trial court abused its discretion. Gourash v. Gourash (Sep. 2, 1999), Cuyahoga App. Nos. 71882 and 73971, unreported.
The trial court found the eighty thousand dollars ($80,000.00) Marta Meister asked for in attorney's fees to be unreasonable and excessive. The trial court determined that forty-five thousand dollars ($45,000.00) was a fair and reasonable amount to award for attorney's fees. Marta Meister presented some expert testimony concerning estate planning which was unnecessary to a determination of the issues before the trial court. The trial court did not abuse its discretion by finding the total amount of fees requested by Marta Meister to be unreasonable. The trial court did not abuse its discretion by awarding Marta Meister a little over half the amount sought for attorney's fees.
Marta Meister's sixth assignment of error is overruled.
 VIII.
In her seventh assignment of error, Marta Meister argues the trial court abused its discretion by admitting into evidence an expert's report used in Robert Meister's first divorce. The report appraised Robert Meister's practice at a value of six hundred four thousand dollars ($604,000.00).
Generally, an expert's report which is not properly authenticatedis inadmissible. Collins v. Collins (Feb. 7, 1991), Cuyahoga App. No. 58035, unreported. However, Civ.R. 61 provides that any error or defect in the proceeding which does not affect the substantial rights of the complaining party may be disregarded. Pursuant to this harmless error rule, the existence of error does not require reversal of a judgment unless the error is materially prejudicial to the complaining party. Fada v. Information Sys. Networks Corp. (1994), 98 Ohio App.3d 785.
Robert Meister testified about the document and verified his practice was valued at that amount in 1982. He sold his practice twelve years later for four hundred seventy-eight thousand dollars ($478,000.00). Marta Meister did not cross-examine Robert Meister about the document in question although she did make extensive use of other documents from his first divorce such as appraisals and valuations made in a pre-trial statement. Although the appraisal itself should have been excluded because it was not properly authenticated and was hearsay, Marta Meister has not shown material prejudice by its admission. Robert Meister testified the value of his practice declined from its worth at the time of his marriage to Marta Meister and at the time of its sale some years later.
Marta Meister's seventh assignment of error is overruled.
 IX.
Robert Meister has assigned one assignment of error on his cross-appeal.
 THE TRIAL COURT ABUSED ITS DISCRETION IN AWARDING APPELLANT $45,000 IN ATTORNEY FEES AND EXPENSES.
Finding the appeal to lack merit, the judgment of the trial court is affirmed.
In his assignment of error, Robert Meister argues the charged fees and expenses of his former wife's attorney were unreasonable and that the trial court did not explain the basis for its award.
Marta Meister's attorney testified at length about his fee and what services were provided to his client during the pendency of this action. The trial court rejected some of the fees as unreasonable and excessive. There was ample evidence before the trial court to support the award of some attorney's fees to Marta Meister. Robert Meister received more than enough assets in the divorce decree to enable him to pay the amount awarded in attorney's fees.
Robert Meister's assignment of error lacks merit.
Judgment affirmed in part, reversed in part, and remanded.
It is ordered that plaintiff-appellant/cross-appellee recover of defendant-appellee/cross-appellant one-half of her costs herein taxed.
It is further ordered that defendant-appellee/cross-appellant recover of plaintiff-appellant/cross-appellee one-half of his costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court, Domestic Relations Division, to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANN DYKE, ADM. J. and JAMES D. SWEENEY, J. CONCUR.
 ____________________ LEO M. SPELLACY JUDGE