**WILLIAMS, Appellee,**

v.

**WILLIAMS, Appellant.**

[Cite as *Williams v. Williams* (1996), 116 Ohio App.3d 320.]

Court of Appeals of Ohio,
Sixth District, Williams County.

No. WM–96–008.

Decided Dec. 13, 1996.

*Eric A. Mertz,* for appellee.

*David P. Rupp, Jr.,* for appellant.

---

*Per Curiam.*

This is an appeal from a judgment entry of the Williams County Court of Common Pleas, filed on January 17, 1996, in which appellant, Marcia J. Williams, and appellee, Michael L. Williams, were granted a divorce. Appellant has presented three assignments of error:

"First Assignment of Error

"The trial court erred to the prejudice of defendant in awarding her an inadequate amount of spousal support of only $1,000.00 per month over an insufficient period of time of only 18 months.

"Second Assignment of Error

"The trial court erred to the prejudice of defendant in not awarding her the premarital vehicle value of $4,000.00.

"Third Assignment of Error

"The trial court erred to the prejudice of defendant in failing to award her attorney fees incurred by her in this case."

Turning to the issues raised in the first assignment of error, we note that the magistrate in the trial court found that appellee should pay appellant $1,000 per month for eighteen months for spousal support. Appellant objected to the magistrate's decision. The trial court reviewed the objections and the magistrate's ruling and issued a decision and judgment entry on December 1, 1995 in which it stated:

"[T]he Court finds that the magistrate properly considered all necessary elements on the issue of spousal support, and the court, also, independently finds that the marriage was of relatively short duration (eight years when she filed her divorce action), that the wife was in good health, that she had been employed before and during the greatest part of the marriage, that she was employable, that her earning potential was approximately $14,000 per annum, and that the husband has imputed earnings of $100,000 per annum. The court also takes into consideration the agreed-upon property division as reflected by the agreement of the parties. Temporary spousal support has been paid by the husband to the wife from the time the parties separated until the magistrate's decision. Therefore, the court finds that the duration of the spousal support (eighteen months after November 1, 1995) is reasonable and proper under the circumstances, and the magistrate's decision is found to be supported by the evidence and is adopted. As to the amount, the court independently finds that the facts would sustain a spousal support order of a lesser amount, but as the issue was not raised by the husband, the court will not disturb the magistrate's decision, and it is found to be supported by the evidence and is adopted as to the amount of spousal support."

■ Appellant contends that she is entitled to a larger amount of alimony for a longer period of time. For the following reasons, we agree.

■ Pursuant to R.C. 3105.18(B), either party in a divorce may be awarded reasonable spousal support following the division of property. An award of spousal support will be reversed on appeal only if an abuse of discretion is shown. *Bechtol v. Bechtol* (1990), 49 Ohio St.3d 21, 24, 550 N.E.2d 178, 181. In reaching

its decision on a request for spousal support, the trial court is governed by the fourteen factors found in R.C. 3105.18(C)(1), and, as the Supreme Court of Ohio has stated, the trial court must "not base its determination upon any one of these factors taken in isolation." *Kaechele v. Kaechele* (1988), 35 Ohio St.3d 93, 96, 518 N.E.2d 1197, 1200. R.C. 3105.18(C)(1) provides:

"(C)(1) In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:

"(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;

"(b) The relative earning abilities of the parties;

"(c) The ages and the physical, mental, and emotional conditions of the parties;

"(d) The retirement benefits of the parties;

"(e) The duration of the marriage;

"(f) The extent to which it would be inappropriate for a party, because he will be custodian of a minor child of the marriage, to seek employment outside the home;

"(g) The standard of living of the parties established during the marriage;

"(h) The relative extent of education of the parties;

"(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;

"(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;

"(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;

"(*l*) The tax consequences, for each party, of an award of spousal support;

"(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;

"(n) Any other factor that the court expressly finds to be relevant and equitable."

Keeping the standard of review and the factors in mind, we now review the evidence.

As to the factor relating to the length of the marriage, the record in this case shows that appellant and appellee were married on September 20, 1986. Appellee filed a complaint for a divorce on November 17, 1994. Appellant later filed a counterclaim for divorce. The parties were married more than eight years before the trial court filed an order granting each of them a divorce.

No children were born of the marriage, so the factor relating to one party being precluded from seeking employment outside the home because of the need to care for minor children of the marriage is inapplicable.

The evidence relating to the ages and the physical, mental, and emotional conditions of the parties showed that appellant was born on June 18, 1948. Appellee was born on February 1, 1950. Accordingly, the parties are close in age. In addition, both parties testified that they possess good health.

The record shows the following with regard to the sources of income of the parties, the relative earning abilities of the parties, and the retirement benefits of the parties. A stipulation was filed by the parties in the trial court relating to the division of personal property. Pursuant to the stipulation, appellee received marital property valued at $6,505. Appellant received marital property valued at $2,775. Appellee agreed to pay appellant one-half the difference between the value of the marital property he received and the value of the marital property she received. Both parties kept the personal property they possessed before the marriage and the personal property that they acquired as gifts during the marriage.

The stipulation also provided for the disposal of the marital residence. The parties agreed that the value of the property was $116,000. Appellee agreed to purchase the property for that value. After subtracting from the sale price the expenses of the sale, the payment of the mortgage and current taxes, appellee agreed to refund to appellant the $11,000 she had paid as a down payment on the home from her premarital funds. Any remaining net proceeds are to be divided equally between the parties.

The parties also agreed in the stipulation to divide their pension plans through a qualified domestic relations order ("QDRO") and to equally divide their income tax refund for 1994.

Appellee is an executive vice president of a bank. He is responsible for the human resources department of the bank. As income he receives a base salary, a company car with insurance and repairs included, and a country club membership. He also is eligible to receive a year-end bonus if he receives a good evaluation for his individual performance and if the bank has profits for the year.

In addition, the bank provides matching funds for contributions he makes to a 401k retirement plan. As he testified: "They match dollar for dollar up to three percent for every dollar that we put and it's pre-taxed." The president of the bank testified that appellee has routinely received promotions and bonuses and that his employment is stable.

Appellant was working as a loan secretary at the bank when she met appellee. She continued to work for the bank following her marriage to appellee, but because of a bank policy that prohibits spouses from working at the same branch location, she was forced to leave her position at the branch in Bryan, Ohio. She transferred to a branch in Edgerton, Ohio, and later to a branch in Defiance, Ohio. She drove to work daily from Bryan, Ohio. In 1992, the position she held was transferred to Bowling Green. She was offered a position in Defiance, but as appellee testified, a decision was made by appellant and appellee together that appellant would quit working for the bank. Appellee testified:

"Well, on this circumstances, she didn't have to work. Our income was fairly substantial. She had indicated she didn't really like working full time, so we talked about finding something part-time and it was awkward having two of us working at the same bank."

Appellant then took a part-time job at an office for an insurance agency. She worked there for six months, then quit in May 1994. She remained unemployed at the time of the hearing in the trial court. She testified that she has a high school education and has basic secretarial skills, but she has limited experience working with computers.

Appellant's wages in 1991 were $13,754. Her wages in 1992 were $15,660. In 1993, after quitting her full-time job with the bank midyear and taking a part-time job, she earned $7,229.

Appellee testified that in 1993 his base salary was $72,000 and his total income, including his benefits, was $83,569.00. He testified that in 1994 his base salary was $76,000 and his total income, including his benefits, was $99,206. In 1995 his base salary was $80,000. At the time of the hearing in the trial court, his total income for the year was unknown, because the bonus he would receive for the year, if any, had not yet been awarded.

An exhibit admitted into evidence shows that appellant has a pension of $6,449.41 and a 401k account with a balance of $15,013.11. An exhibit admitted into evidence shows that appellee has a pension of $27,775 and a 401k account with a balance of $69,448.80. Appellee testified that prior to his marriage to appellant, he had $8,000 in a defined retirement plan and appellant had $2,900 in a defined retirement plan.

Taken as a whole, the evidence shows that while the parties agreed to a property division that granted them fairly equal amounts, appellee has a far greater income than appellant and has a far greater earning ability than appellant, as well as prospects for a greater income during retirement.

Both parties testified that they enjoyed a good standard of living while they were married. They had a nice home in a good neighborhood. They had two reliable vehicles. They were both members of the country club. They took two or three vacations a year. They ate out frequently, including weeknights. They both regularly bought new clothing. They spent money freely on entertainment and purchases and enjoyed an active social life.

Appellant testified that she has a high school education with no further training. Appellee testified that he attends seminars through the bank and receives training in his field.

Appellee has an obligation to pay child support for his daughter from his first marriage until the year 2000. The monthly child support obligation is $540. In addition, appellee has agreed to pay for his daughter's college education. The parties had a mortgage of $66,916.21 on the marital residence, and an equity line second mortgage of $3,024.74; appellee used the equity line extensively after he separated from appellant, increasing the amount of the second mortgage by approximately $2,000. During the marriage, the couple leased a 1993 Ford Explorer; the lease payment was $430 a month for three years.

No testimony was given that either party contributed toward the education, training, or earning ability of the other party. Accordingly, this factor is not relevant in this case. Likewise, neither party submitted any evidence to show that he or she would require any time to acquire education, training or job experience before he or she would be qualified to get appropriate employment.

The evidence showed that appellee is in a higher tax bracket than appellant. Therefore, the tax consequences of an award of spousal support to appellant would be to permit appellee to deduct the payments from his income and to require appellant to claim the payments as income that would be taxed at a lower rate than if appellee retained the money.

No evidence was presented by either party to show that he or she lost income-production capacity because of marital responsibilities. Accordingly, this factor is not applicable in this case.

Finally, the only other factor expressly mentioned by the magistrate in the trial court was that appellee had paid appellant spousal support during the temporary orders in this case. The record shows that the amount paid by appellee for temporary spousal support was $125 per week, beginning on December 2, 1994.

When considering all of the factors together, this court concludes that the trial court failed to properly consider the great disparity between the earning abilities of the parties and the great disparity between the standard of living the parties enjoyed during the marriage compared to the standard of living appellant could expect to maintain following the marriage on such a small amount of spousal support. Furthermore, while the trial court appeared to be inferring that since appellant was able to live on the temporary spousal support of $125 per week, she clearly did not require a substantial sum for spousal support following the divorce, the trial court has failed to consider that prior to the divorce appellant was not responsible to pay mortgage payments, or taxes and insurance on the home, or health insurance, or lease payments for a vehicle or utilities. Appellant testified that she used the $125 per week to pay for food, her telephone bill and the newspaper. Following the divorce of the parties, appellant will clearly have need of more money to provide for her daily needs than she had prior to the divorce. Accordingly, this court finds that the trial court abused its discretion when it awarded appellant spousal support in the amount of only $1,000 per month for eighteen months. Appellant's first assignment of error is well taken.

■ In support of her second assignment of error, appellant argues that the trial court erred when it failed to grant her an award of $4,000 for the proceeds from the sale of a vehicle she owned prior to the marriage. Appellant testified that she owned a vehicle prior to the marriage that she sold for $4,000 after the marriage. Appellant did not testify about what she did with the proceeds. R.C. 3105.171(A)(6)(b) states: "The commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, except when the separate property is not traceable." Since the record does not contain any testimony or evidence to trace the proceeds from the sale of the car appellant owned before the marriage, the trial court did not abuse its discretion when it did not include an order granting appellant the amount of $4,000 as separate property. Appellant's second assignment of error is not well taken.

In support of her third assignment of error, appellant argues that she was entitled to an award of her attorney fees. The trial court in this case overruled an objection raised by appellant to the decision of the magistrate not to award her attorney fees. The trial court stated:

"Addressing Objection Five, the court finds that fees in the amount of $750 had been previously ordered, and finds that amount to have been proper under the circumstances when they were ordered. The court finds that each party should pay his and her own attorney's fees. Under the facts herein, the court finds the magistrate's decision with respect to additional attorney's fees to be proper and supported by the evidence, and so it is adopted."

The trial court subsequently filed a judgment entry ordering each party to pay his or her own attorney fees.

R.C. 3105.18(H) provides:

"(H) In divorce or legal separation proceedings, the court may award reasonable attorney's fees to either party at any stage of the proceedings, including, but not limited to, any appeal, any proceeding arising from a motion to modify a prior order or decree, and any proceeding to enforce a prior order or decree, if it determines that the other party has the ability to pay the attorney's fees that the court awards. When the court determines whether to award reasonable attorney's fees to any party pursuant to this division, it shall determine whether either party will be prevented from fully litigating his rights and adequately protecting his interests if it does not award reasonable attorney's fees."

As this court recently stated:

"The award of attorney fees in a divorce proceeding is a matter committed to the sound discretion of the trial court and, therefore, will not be disturbed on appeal absent an abuse of that discretion. *Birath v. Birath* (1988), 53 Ohio App.3d 31, 39, 558 N.E.2d 63, 71–72. When attorney fees are awarded in divorce proceedings, they are awarded as part of alimony. Consequently, the court must contemplate those same factors contained in R.C. 3105.18(B) that it considers when it makes an alimony award. The overriding consideration, however, is the financial ability of the party against whom the award is made to pay. *Swanson v. Swanson* (1976), 48 Ohio App.2d 85, 95, 2 O.O.3d 65, 71, 355 N.E.2d 894, 901, citing *Rivers v. Rivers* (1968), 14 Ohio App.2d 120, 43 O.O.2d 277, 237 N.E.2d 164." *Colello v. Colello* (Aug. 9, 1996), Lucas App. No. L–95–322, unreported, 1996 WL 446842.

As we have already noted in our discussion of the first assignment of error, appellee always had much higher earnings than appellant during their marriage, and appellant has no prospects of ever obtaining the same type of income that appellee can continue to expect in his career. Due to a mutual agreement of the parties during the marriage, appellant quit working during the marriage and had no independent source of income. She will now have to re-enter the work force and can expect to make substantially lower wages than appellee. Therefore, because the record shows that appellee has a far greater ability to pay, and because it is clear that appellant had need of counsel to fully litigate the issues in this case, we conclude that the trial court did abuse its discretion when it failed to award reasonable attorney fees to appellant. Appellant's third assignment of error is well taken.

The judgment of the Williams County Court of Common Pleas is reversed in part and affirmed in part. This case is remanded for a redetermination of the

spousal support award and for an award of reasonable attorney fees to appellant. Appellee is ordered to pay the court costs of this appeal.

*Judgment reversed*
*and cause remanded.*

HANDWORK, GLASSER and ABOOD, JJ., concur.