OPINION
Defendant-appellant/cross-appellee, Claudio Gallo, appeals from the judgment entry of divorce by the Lake County Court of Common Pleas, Domestic Division, concerning the property division and award of spousal support. Plaintiff-appellee/cross-appellant, Sheila Gallo, appeals from the same judgment entry, raising issues of a distributive award and attorney's fees on appeal.
The parties married on September 28, 1967. Three children, all now emancipated, were born as issue of the marriage. Claudio Gallo vacated the marital residence on November 1, 1997. On November 10, 1997, Sheila Gallo filed a complaint for legal separation. On November 26, 1997, Claudio Gallo filed his answer and counterclaim for divorce. On December 23, 1997, the trial court awarded Sheila Gallo $1,000 in temporary spousal support. That amount was increased, commencing May 1, 1998, to $2,500. The spousal support payment increased to $2,750 on June 1, 1998.
On August 6, 1998, in an agreed judgment entry, the KeyBank certificate of deposit in the name of Claudio Gallo and Kenneth Gallo was closed and distributed to the parties' son, Kenneth Gallo, pursuant to a restraining order. After the bank accounts, including the certificate of deposit at issue, of the parties were restrained by court order, Claudio Gallo obtained a loan to pay for the final quarter of Kenneth's college education.
On November 2, 1998, the parties stipulated that a condominium, located in Willoughby, purchased during the marriage had a fair market value of $98,000, with a $70,358 mortgage balance. The parties never lived in the condominium. The Mentor marital residence was listed for sale for $234,900.
Testimony indicates that in 1992, Claudio Gallo, without informing his wife, opened a $30,000 bank account in his name and that of his long-time nurse, Susan Pfeil. Claudio Gallo testified the account was intended to be a gift to Pfeil upon her retirement. Pfeil did not pay any income tax for the gift, but did declare the interest on the account for her income tax purposes. Pfeil received $200 from the account for her birthday. Claudio Gallo both deposited and withdrew money from the account on numerous occasions. Claudio Gallo testified he withdrew approximately $34,000 from the account over a period of time. Gallo stated he used the funds to pay for marital credit card debt, taxes, and college costs.
In 1994, Claudio Gallo opened a bank account in his name and that of the parties' eldest daughter Laura, without the knowledge of Sheila Gallo. Laura was emancipated at the time the account was opened. Claudio Gallo placed about $20,000 in the account. Claudio Gallo stated the account was in lieu of Laura's future inheritance. Laura was to repay any funds she withdrew from the account prior to his death. Claudio Gallo could and did withdraw funds from the account. He took $10,000 for the payment of taxes and had not reimbursed the account at the time of the divorce hearing.
The matter came before a magistrate for hearing, commencing December 21, 1998. Sheila Gallo, 51 years old at the time, testified she only had held a few part-time positions during the marriage for short periods of time. She earned about $4,000 during the 30 years of the marriage. Claudio Gallo, 59 years of age at the time of the hearing, did not wish his wife to work because he believed it reflected poorly on his status in the community. Sheila Gallo provided most of the childcare during the marriage, due in part to the long hours Claudio Gallo worked as a surgeon. Sheila Gallo had some college courses, but never attained a degree. She periodically took a class at different educational institutions during the marriage.
Sheila Gallo received $51,000 from a Dalkon Shield settlement. The money was placed in a separate bank account. Claudio Gallo received approximately $11,000 in the settlement as well. His settlement money was used for marital expenses. $18,000 of Sheila Gallo's settlement monies was used as a down-payment for a condominium located in Willoughby. The condominium was purchased for the use of Claudio Gallo's sister and her family. The property was titled in both litigants' names. The rental payment from Claudio Gallo's sister covered the mortgage payment, taxes, and maintenance fees until shortly before the hearing. Claudio Gallo paid for the difference without charging his sister higher rent. Claudio Gallo testified he spent about $3,000 a year of marital monies on expenses for the condominium.
On August 20, 1999, the magistrate issued its decision. The magistrate found that the condominium was the separate property of Sheila Gallo because the down-payment came from her separate property and because there had been no substantial investment of marital funds since the purchase of the property. The $20,000 in the account for nurse Pfeil was determined to be marital property. The magistrate found the funds remaining in the bank accounts Claudio Gallo opened in his daughter's and son's names also were marital property. After discussing the factors set forth in R.C. 3105.18, the magistrate awarded Sheila Gallo spousal support in the amount of $4,000, per month. The magistrate declined to award Sheila Gallo any attorney's fees.
On November 24, 2000, the trial court issued its judgment entry of divorce. The loan obtained by Claudio Gallo for son Kenneth's education was deemed to be Claudio Gallo's separate liability. The trial court awarded Sheila Gallo $5,000 per month in spousal support, until her death or re-marriage. Both parties have appealed from this ruling.
Claudio Gallo assigns the following errors for review:
 "[1.] The trial court erred in finding that the condominium located at 5481 Millwood Lane, Willoughby, Ohio, was separate property of Sheila Gallo.
 "[2.] The trial court erred in finding that monies in joint bank account with Laura Gallo was marital property rather than a gift.
 "[3.] The trial court erred in determining that the loan taken out by Claudio Gallo for the education of Ken Gallo is the sole obligation of Claudio Gallo.
 "[4.] Trial court erred in granting spousal support to Sheila Gallo in the amount of five thousand ($5,000.00) dollars per month."
Sheila Gallo has cross-appealed and assigns these errors for our review:
 "[1.] The trial court erred to the prejudice of Appellee by failing to make a distributive award in the full amount of the assets dissipated and concealed by Appellant.
 "[2.] The trial court erred to the prejudice of Appellee by failing to award her attorney fees."
In his first assignment of error, Claudio Gallo contends the condominium purchased for the use of his sister and her family is marital property subject to division. The trial court awarded the property to Sheila Gallo as her separate property. Claudio Gallo admits the down-payment for the property came from his wife's separate property, but argues that his money and labor contributed to any increase in the property's value.
In divorce proceedings, a trial court must first determine what constitutes marital property and what constitutes separate property. R.C. 3105.171(B). Once the trial court has determined the status of the parties' property, the trial court generally must disburse a spouse's separate property to that spouse and equitably distribute the marital estate. R.C. 3105.171(B) and (C). An increase in the value of separate property caused by the contribution of either spouse, whether by monetary, labor, or in-kind means, is deemed to be marital property.Middendorf v. Middendorf, 82 Ohio St.3d 397, 1998-Ohio-403. Appreciation, resulting from an increase in the fair market value of property, is considered passive income and remains the separate property of the spouse. Munroe v. Munroe (1997), 119 Ohio App.3d 530, 536.
An appellate court applies a manifest weight of the evidence standard of review to a trial court's designation of property as either marital or separate. Barkley v. Barkley (1997), 119 Ohio App.3d 155, 159. Therefore, the judgment of the trial court will not be disturbed upon appeal if supported by some competent, credible evidence. Fletcher v.Fletcher, 68 Ohio St.3d 464, 468, 1994-Ohio-434.
Spouses can change the nature of the property through their conduct during the marriage. Moore v. Moore (1992), 83 Ohio App.3d 75, 77. However, the commingling of separate property with marital property will not destroy the identity of the separate property if that property remains traceable. R.C. 3105.171(A)(6)(b); Peck v. Peck (1994),96 Ohio App.3d 731. "[T]raceability has become the focus when determining whether separate property has lost its separate character after being commingled with marital property." Id. at 734. The party seeking to have a certain asset characterized as separate property bears the burden of proof by a preponderance of the evidence standard. Boyles v. Boyles (Oct. 5, 2001), 11th Dist. No. 2000-P-0072, 2001 Ohio App. LEXIS 4520; Maticv. Matic (July 27, 2001), 11th Dist. No. 2000-G-2266, 2001 Ohio App. LEXIS 3360; O'Brikis v. O'Brikis (Oct. 6, 2000), 11th Dist. No. 99-P-0045, 2000 Ohio App. LEXIS 4663; Polakoff v. Polakoff (Aug. 4, 2000), 11th Dist. No. 98-T-0163, 2000 Ohio App. LEXIS 3542; Letson v.Letson (Sept. 30, 1997), 11th Dist. No. 95-T-5356, 1997 Ohio App. LEXIS 4445.
A trial court is to assume that any property acquired during the marriage is marital, unless evidence is offered to rebut the presumption. Barkley, supra, 119 Ohio App.3d at 160. The property at issue was acquired well after the Gallos married. The down-payment came from money Sheila Gallo received in settlement of a Dalkon Shield claim. The settlement money was placed in a separate account and was never co-mingled with marital funds. There was evidence that Claudio Gallo admitted the settlement awarded to Sheila Gallo was her money. Therefore, the amount of the down-payment remained the separate property of Sheila Gallo.
The property was titled in both parties' names at the time of purchase. The purpose of buying the condominium was to provide a residence for Claudio Gallo's sister and her family. The holding of title to real property by both spouses is not determinative of whether the property is marital or separate. R.C. 3105.171(H). However, title can be some evidence of the parties' intent as to the nature of the asset as being marital or separate. There was no evidence Sheila Gallo purchased the property as an investment. She testified the property was acquired for the use of Claudio Gallo's sister and her family. Claudio Gallo testified he collected the rent from his sister and engaged in some minor repairs of the property. The rental payments were placed in a marital account. Mortgage payments and maintenance fees also were paid from marital accounts. There was evidence the rental payment eventually did not cover the full cost of the mortgage, taxes, and maintenance fees, causing the difference to be paid by Claudio Gallo. Claudio Gallo testified he spent approximately $3,000 a year for the property. According to Middendorf,
supra, appreciation caused by the use of marital funds and/or labor expended by the parties, which causes any appreciation in the real estate, is marital property, subject to division by the court.
Sheila Gallo bore the burden of proving the condominium was her separate property. Aside from the evidence pertaining to the down-payment, she provided no evidence regarding the property subsequent to purchase to show the real estate remained her separate property. Indeed, she seemed to have little, if any, input into anything with regard to the condominium. Sheila Gallo did not meet her burden of proof in establishing that the appreciation remained her separate property. The trial court abused its discretion in failing to classify the appreciation of the property as marital property and divide it between the parties. Claudio Gallo's first assignment of error is well-taken.
In his second assignment of error, Claudio Gallo asserts the trial court erred in determining the bank account in his and daughter Laura's names was marital property and not a gift to Laura. Claudio Gallo maintains he frequently gifted his three children with money throughout the marriage and that this bank account was no different. Claudio Gallo argues that, although he withdrew monies from the account, his intent was to repay the funds.
An inter vivos gift occurs when the donor executes an immediate voluntary, gratuitous, and irrevocable transfer of property to the donee. Smith v. Shafer (1993), 89 Ohio App.3d 181, 183. The elements of an inter vivos gift are (1) the intent of the donor to make an immediate gift; (2) the delivery of the property to the donee; and (3) acceptance of the gift by the donee after the donor has relinquished control of the property. If any of the elements is not satisfied, the gift as a whole fails. Mauser v. Mauser (July 20, 2001), 11th Dist. No. 2000-P-0039, 2001 Ohio App. LEXIS 3281. The donor must relinquish ownership, dominion, and control over the property. See Bolles v. Toledo Trust Co. (1936),132 Ohio St. 21, paragraph one of the syllabus. A trial court's factual determination of whether donative intent is present must be supported by some competent, credible evidence. This standard is highly deferential to the trial court. Even some evidence is sufficient to sustain the judgment against a reversal on appeal. West v. West, 9th Dist. No. 01CA0045, 2002-Ohio-118, 2002 Ohio App. LEXIS 1067.
The trial court determined this account to be marital property. The evidence submitted to the trial court showed Claudio Gallo established the account with Laura in 1994. Claudio Gallo testified the account was intended to be an early inheritance and was for emergencies. Claudio Gallo expects Laura to repay the account if she withdraws any money from it prior to his death. Claudio Gallo has "borrowed" $10,000 from the bank account to use for a tax payment. He had not repaid the monies at the time of the hearing. This evidence supports the trial court's finding that the account is marital property. Claudio Gallo never completely relinquished control or dominium over the property as evidenced by his requirement that his daughter repay the account if she used it prior to his death and appellant's withdrawal of funds from the account for his own use. This demonstrates that Claudio Gallo lacked the requisite donative intent to establish that he made an inter vivos gift to his daughter. Claudio Gallo's second assignment of error is overruled.
In his third assignment of error, Claudio Gallo contends the trial court erred in finding the loan he obtained for the college education of the parties' emancipated son was his sole obligation and not the joint responsibility of both parents. Claudio Gallo points out he consistently paid for his children's college expenses throughout the marriage. He maintains that the decision to send their son to college was made by both parties and the expenses were paid by marital funds up until the time of separation. Claudio Gallo argues that the loan he obtained in order to pay for his son's final quarter of college should be deemed to be a marital obligation as the certificate of deposit, which was intended to be used for this expense, was restrained by order of the trial court during the proceedings.
There is no statutory provision regarding the obligation of a parent to fund the education of an emancipated child. Generally, a trial court is without jurisdiction to order a parent to support a child once that child reaches the age of majority. Maphet v. Heiselman (1984),13 Ohio App.3d 278, 279. The parties to a divorce may agree that a portion of marital funds may be earmarked for this purpose. However, without such an express agreement, no statutory authority exists to order marital property be expended for the benefit of an adult child. Russo v.Russo (Mar. 16, 1998), 5th Dist. 97CA0205, 1998 Ohio App. LEXIS 1293. An express agreement between divorcing parents that they will provide a college education to their emancipated children may be enforced by a court. Grant v. Grant (1977), 60 Ohio App.2d 277.
There is no record of any express agreement between the parties that both would pay for the remainder of their son's college education. Courts will not enforce, what is in effect, a tacit agreement to support an adult child's college expenses, commendable as that goal may be to all concerned. Claudio Gallo is, in essence, asking Sheila Gallo to provide support for their emancipated son in the absence of an express agreement. Sheila Gallo has consistently refused to pay even part of this expense since this action was filed. It was only after the proceedings commenced that Claudio Gallo obtained a loan to pay for his son's final quarter of college. The loan was taken out after the date of the end of the marriage, as determined by the trial court. This decision was unilateral on his part.
Claudio Gallo is asking that Sheila Gallo be held responsible for the loan he obtained after the term of the marriage ended. Sheila Gallo was not a signatory to the loan, nor is there any indication in the record that she orally agreed to be responsible for the loan in any fashion. The issue of Sheila Gallo's obligation for the loan is not subject to the statute of frauds because Sheila Gallo made no promise or representation to the bank that she would be responsible for the loan. See Roberts v. G W Industries, Inc. (Apr. 30, 1987), 8th Dist. No. 52006, 1987 Ohio App. LEXIS 7013. Therefore, no writing of her agreement is necessary for Claudio Gallo to prove her obligation. However, there is nothing in the record showing Sheila Gallo knew about the loan at the time it was obtained or agreed, in any way, to be liable for the loan. Claudio Gallo is asking, in effect, that Sheila Gallo be held responsible for a contract she did not enter into and to be subject to all the obligations and ramifications that attach to a debtor on a loan agreement.
Also, Sheila Gallo could not be found liable for the loan agreement as an agent because there was no express agreement or grant of authority.Sharma v. Sahota, 11th Dist. No. 2000-G-2290, 2001-Ohio-8798, 2001 Ohio App. LEXIS 5206. Claudio Gallo has advanced no theory under which Sheila Gallo would be responsible for the loan he obtained for their emancipated son's college education. The trial court did not abuse its discretion by finding that the loan was Claudio Gallo's separate obligation. Claudio Gallo's third assignment of error lacks merit.
In his final assignment of error, Claudio Gallo asserts the trial court abused its discretion by awarding Sheila Gallo spousal support in the amount of $5,000. Claudio Gallo argues that his salary was reduced in 1999, giving him less money for expenses. He claims his wife is capable of working and earning between $12,000 and $13,000. Claudio Gallo contends Sheila Gallo could complete her education and earn an even higher salary, but has done nothing to obtain employment or pursue finishing her education.
An award of spousal support is reviewed under an abuse of discretion standard. Booth v. Booth (1989), 44 Ohio St.3d 142, 144. A trial court enjoys broad discretion in fashioning an award of spousal support. An award will be upheld if it is appropriate and reasonable. The award or denial of spousal support will not be reversed on appeal absent an abuse of discretion. Matic v. Matic (July 27, 2001), 11th Dist. No. 2000-G-2266, 2001 Ohio App. LEXIS 3360. The party challenging the award bears the burden of showing the award was the result of an abuse of discretion. West v. West, 9th Dist. No. 01CA0045, 2002-Ohio-1118, 2002 Ohio App. LEXIS 1067.
In determining if an award of spousal support would be appropriate and reasonable the trial court must consider the factors set forth in R.C.3105.18(C)(1). Those factors are:
 "(1) the income of the parties; (2) the earning abilities of the parties; (3) the ages and health of the parties; (4) the parties' retirement benefits; (5) the duration of the marriage; (6) the appropriateness of the parties to seek employment outside the home; (7) the marital standing of living; (8) the education of the parties; (9) the assets and liabilities of the parties; (10) the contribution of either party to the other's education; (11) the cost of education of the party seeking support; (12) the tax consequences of a spousal support award; (13) the lost income that results from the parties' marital responsibilities; and (14) and other factor the court deems relevant."
Id. at 10. A trial court must indicate the basis for awarding spousal support in sufficient detail for an appellate court to adequately review the issue. Stafinsky v. Stafinsky (1996), 116 Ohio App.3d 781, 784. The amount of the support is discretionary with the trial court. Moore v.Moore (1992), 83 Ohio App.3d 75, 78.
An award of spousal support must be equitable. To be equitable, the parties should, if feasible, enjoy a standard of living comparable to that enjoyed during the marriage, adjusted by the factors set forth in R.C.3105.18. This standard is the highest, and not the lowest, to be utilized in determining the amount of spousal support. However, the standard of living between the parties after the divorce need not be equal. Glass v.Glass (Dec. 22, 2000), 11th Dist. No. 99-L-120, 2000 Ohio App. LEXIS 6103.
The magistrate carefully reviewed the factors set forth in R.C. 3105.18
before recommending an award of $4,000 per month in support to Sheila Gallo. The judgment entry of the trial court raised that amount to $5,000, with no explanation of the basis of that award. Because the judgment entry contains no reasoning of the basis of the award, this court cannot adequately review the judgment of the trial court on this issue. The matter of the spousal support is remanded to the trial court to set forth the reason why it increased the award by $1,000. Claudio Gallo's fourth assignment of error is sustained.
In her first assignment of error, Sheila Gallo contends the trial court erred by failing to make a distributive award in the full amount of the assets dissipated and concealed by Claudio Gallo. Sheila Gallo argues the trial court found her husband concealed funds from her during the marriage, primarily in the accounts established in the names their daughter Laura, their son Kenneth, and Claudio Gallo's nurse, Sue Pfeil. Sheila Gallo submits that Claudio Gallo used these funds for his own purposes, without her knowledge of their existence. Sheila Gallo objects to the trial court's award of only the amount left in the accounts of her daughter and Pfiel and not the full amount deposited in each account by Claudio Gallo during the marriage.
A trial court may compensate an offended spouse with a distributive award if the other spouse engaged in financial misconduct, including, but not limited to, the dissipation, destruction, concealment, or fraudulent disposition of assets. R.C. 3105.171(E)(3). The offended party bears the burden of proving financial misconduct by his or her spouse. A trial court's decision of whether or not to make a distributive award is reviewed under the abuse of discretion standard. Thill v. Thill (Aug. 17, 2001), 2nd Dist. No. 2001-CA-23, 2001 Ohio App. LEXIS 3610. An abuse of discretion implies that the court's attitude was unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
In Czup v. Czup (Sept. 17, 1999), 11th Dist. No. 98-A-0046, 1999 Ohio App. LEXIS 4324, the husband secreted funds in a savings account and used the money to pay for marital expenses. This court upheld the trial court's decision not to make a distributive award.
The evidence adduced at trial and in discovery showed that the money spent from Laura's and Phiel's accounts primarily went to pay marital expenses such as taxes and credit card bills. The son's account was used for his college costs. Sheila Gallo produced no evidence contradicting Claudio Gallo's testimony as to the use of the money. As in Czup, the money was used for marital expenses and for the education of the parties' son. The trial court did not abuse its discretion in deciding not to make a full distributive award because the Claudio Gall did not fraudulently dispose of the assets. Sheila Gallo's first assignment of error is overruled.
In her second assignment of error, Sheila Gallo argues she was prejudiced by the court's failure to award her attorney's fees. Sheila Gallo contends the conduct of Claudio Gallo in pursuing a frivolous claim to her separate property resulted in significant legal expense. She also maintains that his financial misconduct should have led to an award of attorney's fees.
R.C. 3105.18(H) governs the award of reasonable attorney's fees at any stage of divorce or legal separation proceedings. The court must determine whether either party will be prevented from fully litigating his or her rights and if that party's rights will be adequately protected without an award. The award of attorney's fees resides in the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of that discretion. Williams v. Williams (1996),116 Ohio App.3d 320, 328. In considering whether or not to award attorney's fees in a divorce proceeding, the trial court must consider the factors set forth in R.C. 3105.18(B), as such an award is considered to be spousal support. Glick v. Glick (1999), 133 Ohio App.3d 821, 831. Before making its decision regarding the award of attorney's fees, the trial court must determine that: (1) the attorney's fees are reasonable; (2) the other party has the ability to pay the award; and (3) whether either party will be prevented from fully litigating that party's rights and adequately protecting that party's interests in the absence of an award. Trott v. Trott, 10th Dist. No. 01AP-852, 2002-Ohio-1077, 2002 Ohio App. LEXIS 1068. A trial court does not abuse its discretion by denying a request for attorney's fees upon a finding that both parties were able to pursue and fully litigate their rights adequately. Fisher v. Fisher, 3rd Dist. No. 7-01-12, 2002-Ohio-1297, 2002 Ohio App. LEXIS 1323.
The magistrate determined an award of attorney's fees was not appropriate in the instant case. The magistrate found that both parties have sufficient assets to pay their own attorney's fees and that neither party was prevented from fully litigating his or her rights in the matter. The magistrate noted Sheila Gallo was awarded considerable assets in the proceedings as well as spousal support.
The record supports these findings. There is no indication Sheila Gallo was prevented in any way from pursuing her rights in the divorce proceedings. This court has determined Claudio Gallo's claim that the condominium was, at least partly, marital property was meritorious. Further, the funds secreted in the different bank accounts primarily were spent on marital obligations. The decision not to award attorney's fees was not an abuse of discretion. Sheila Gallo's second assignment of error is overruled.
The judgment of the Lake County Court of Common Pleas, Domestic Relations Division, is affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.
It is further ordered that the judgment of the Lake County Court of Common Pleas, Domestic Relations Division, is affirmed with regard to appellee's cross-appeal.
JUDITH A. CHRISTLEY, P.J., ROBERT A. NADER, J., concur.