JOURNAL ENTRY and OPINION
{¶ 1} The domestic relations division granted plaintiff Sherri Ianiro and defendant George Pastis a divorce. Ianiro appeals pro se, complaining of issues relating to spousal support and attorney fees. Ianiro has not filed a transcript of the trial, so our review on issues relating to the evidence is necessarily limited to only those issues in which the parties stipulated to the evidence. Knapp v. Edwards Laboratories
(1980), 61 Ohio St.2d 197, 199. The salient facts will be developed as necessary.
 I {¶ 2} Prior to their marriage, the parties signed an antenuptial agreement which stated that "Sherri shall not be required to indemnify George" with respect to a note George signed as an accommodation to permit Ianiro to obtain refinancing on a house that she owned. After the parties separated, Ianiro defaulted on the house. At trial, she argued that the antenuptial agreement should make Pastis liable for all the remaining mortgage payments on the property (26 years worth), even though he held no equity in the house. The court rejected this argument, finding that it would be unfair to order Pastis to indemnify Ianiro on his non-payment of her mortgage since it was separate property and he had no ownership interest or equity in that property. Ianiro cites this finding as error.
 {¶ 3} There is no dispute about the validity of the antenuptial agreement — the question is whether the agreement makes Pastis liable for all the mortgage payments on Ianiro's house. We agree with the court that the agreement that "Sherri shall not be required to indemnify George" is not the same thing as saying that Pastis is primarily liable on the mortgage. The meaning of the term "indemnify" is to make whole and "has been defined to mean to save harmless by giving security for the reimbursement of a person in case of anticipated loss, as by execution and delivery of a bond." Worth v. Aetna Casualty Surety Co. (1987), 32 Ohio St.3d 238, 240.
 {¶ 4} When Pastis co-signed the loan, he agreed to be liable in the event that Ianiro could not make her loan payments. The antenuptial agreement states that if the bank which held the mortgage were to look to Pastis for payment on the loan, he could not turn to Ianiro and try to hold her responsible for the debt. Under no circumstances, however, does the antenuptial agreement require Pastis to make payments on the house for Ianiro's benefit in the event that Ianiro were to default. The court's decision states that the house is in foreclosure, so there is a fair inference that the bank has not looked to Pastis for payment. And it is only as a consequence of being held responsible under the note that the issue of indemnification under the antenuptial agreement could have been raised.
 II {¶ 5} Ianiro next complains about the court's award of spousal support.
 A {¶ 6} She first argues that the court erred by comparing her 2003 monthly expenses to what Pastis earned in 1999. She claims this is unfair.
 {¶ 7} The court has broad discretion under the facts and circumstances of each case in determining the amount of spousal support, if any, to be awarded. Kunkle v. Kunkle (1990),51 Ohio St.3d 64, 67. Nevertheless, the facts the court does employ in its calculation must have a basis in fact, and must be relevant to the calculation.
 {¶ 8} Although Ianiro is correct when she states that the court compared her 2003 expenses to Pastis' 1999 income, what she fails to acknowledge is that the court did so to demonstrate the parties' rather modest financial circumstances both before and during the marriage. The court used these figures as a preamble to its discussion of spousal support, demonstrating that the parties' expenses always exceeded their means, and their money problems necessarily factored into its calculation of spousal support. By no means did the court use old income data to compute Pastis' current income for spousal support purposes.
 B {¶ 9} Ianiro next complains that the court abused its discretion in awarding spousal support of $650 per month for an eight-month period.
 {¶ 10} R.C. 3105.18 sets forth factors the court must consider when considering whether spousal support is "appropriate and reasonable." The court has broad discretion in determining whether an award of spousal support is appropriate, Holcomb v.Holcomb (1989), 44 Ohio St.3d 128, 130-131, and in determining the proper amount of spousal support based on the facts and circumstances of each case. Kunkle v. Kunkle (1990),51 Ohio St.3d 64, 67.
 {¶ 11} There are fourteen factors listed under R.C.3105.18(C)(1), and the court's judgment entry showed that it considered each of them, as applicable, before formulating its award. Of primary consideration to the court was the income of the parties and the relative earning abilities of the parties. Both parties were in their mid-forties at the time of the divorce and neither demonstrated any physical problems that would prevent their gainful employment. There were no children born during the marriage, and the marriage itself lasted just over fourteen months, from September 2000 until the time Ianiro filed her complaint for divorce in December 2001. At the time of the divorce, the parties had no cash, savings or investments. Given their financial troubles, they did not demonstrate a particularly high standard of living during the marriage.
 {¶ 12} As for individual contributions to the marriage, Pastis was the sole source of income. The parties disputed Ianiro's contribution to the marriage, with Ianiro stating that it was understood that she would forego employment to resume her education. The court found this statement "unrealistic" in light of the "actual facts and circumstances;" namely, the parties' lack of financial stability. Indeed, Ianiro continues to deny that her refusal to work had an adverse effect on the parties' finances and simply asserts that Pastis should have availed himself of overtime.
 {¶ 13} We have no difficulty in finding that the court did not abuse its discretion by concluding that Ianiro had unrealistic expectations. The court found that Ianiro had been gainfully employed in retail sales in the past and could do so again. Her prior history of supporting herself makes this conclusion tenable. In fact, the court concluded that Ianiro "presented as an attractive, articulate, and intelligent individual" who would be able to find work in short order and without any retraining. In making this finding, the court expressly noted that Ianiro's claims of continuously seeking employment were unsubstantiated, as she provided no verification or other corroboration for her testimony.
 {¶ 14} Based on all these factors, the court did not abuse its discretion by ordering spousal support for only eight months. Ianiro had worked in the past, she had no demonstrable impediments to finding work in the future, and thus she did not need Pastis' continued support. Certainly, the very short duration of the marriage and Ianiro's refusal to shoulder any responsibility in producing income supported this finding.
 C {¶ 15} Ianiro maintains that her contributions as a homemaker must count for something, regardless of whether she worked a job that paid her an income. We readily agree that the contributions of a spouse to the household can be equally important to those of the wage earner, and the General Assembly expressly recognized this contribution in R.C. 3105.18(B)(11).
 {¶ 16} Nonetheless, Ianiro's contributions as a homemaker in this case were negligible. There were no children to raise at home and we do not have a record that demonstrates that the upkeep of the marital home was so time-consuming that it prevented Ianiro from working. The marriage only lasted fourteen months.
 {¶ 17} Ianiro appears to argue that she concentrated on providing emotional and moral support to Pastis' efforts to earn an income. As far as we can tell from the court's decision, these efforts consisted solely of her repeated exhortations that he seek overtime in order to earn more money. Although we agree that the contribution of a homemaker is important, we cannot say that the court abused its discretion in finding that she did not make a significant contribution in that regard. And as we stated earlier, Ianiro did not provide us with a transcript to show otherwise.
 III {¶ 18} At trial, Ianiro presented the court with an attorney fee statement of $10,692, less $2,000 that she paid to her attorney as a retainer. The court believed these fees were too high given the "nominal assets and the minimal amount of discovery that was necessary." Consequently, it found only $7,500 of those fees were reasonable. It ordered Pastis to pay Ianiro $3,000 toward those fees, less a $705 overpayment for temporary spousal support.
 {¶ 19} When awarding attorney fees, the court must employ the same factors used when making an award of spousal support, and in addition must consider the financial ability of the payor spouse and whether a failure to award reasonable attorney fees will prevent either party from fully litigating his or her rights and adequately protecting his or her interests. Williams v.Williams (1996), 116 Ohio App.3d 320, 328. We review the court's decision on attorney fees for an abuse of discretion.
 {¶ 20} The court did not abuse its discretion by finding that the fees listed in the fee statement were too high. As the court noted, the antenuptial agreement obviated the need for discovery and streamlined the proceedings. There were no extraordinary motions filed, and the parties even agreed on temporary spousal support. The matter did go to trial, but we cannot say what efforts were expended at trial, because we have no transcript of the proceedings to review. From what evidence we do have before us, the relative ability of each party to pay the fees was rightfully the primary factor in the court's decision. Since the parties had modest financial means, they were not free to run up a large attorney fee bill with the thought that the other spouse should have to pay for it.
 {¶ 21} Finally, Ianiro contends that the court should have factored into the spousal support equation a loan she obtained from a friend to pay a retainer. The court did mention this loan, as it noted that Ianiro paid $2,000 as a retainer. In its discretion, it decided that Ianiro should be responsible for that loan, and we cannot say that the court abused its discretion by making this finding.
 IV {¶ 22} Lastly, Ianiro complains that the court erred by not requiring Pastis to continue to provide her medical benefits through continued health insurance. She argues, without any demonstrable proof in the record, that she has a preexisting medical condition that requires continued health care.
 {¶ 23} R.C. 3105.71(A) provides:
 {¶ 24} "If a party to an action for divorce, * * * was the named insured or subscriber under, or the policyholder, * * * of, a policy, contract, or plan of health insurance that provided health insurance coverage for his spouse and dependents immediately prior to the filing of the action, that party shall not cancel or otherwise terminate or cause the termination of such coverage for which the spouse and dependants would otherwise be eligible until the court determines that the party is no longer responsible for providing such health insurance coverage for his spouse and dependents."
 {¶ 25} The court did not mention health benefits in its judgment entry. Ianiro stipulated that Pastis paid for Ianiro's health benefits at least up to the commencement of trial. Pastis likewise conceded that he did provide health insurance to Ianiro, and now claims that her health insurance coverage continued through trial. Unfortunately, since Ianiro failed to file a transcript of the trial, we cannot verify Pastis' claim.
 {¶ 26} But that lack of verification is of no moment. By prohibiting one party from canceling or terminating the health benefits of another party until the court determines that the party who provides such benefits is no longer responsible, the General Assembly evinced an intention to forbid one party from unilaterally terminating those benefits before the court's involvement. Sustaining those benefits until trial maintains the status quo between the parties until such time as the court can allocate the rights and responsibilities of the parties. Once the court grants a divorce, we must assume in the absence of intent to the contrary, that each party becomes responsible for carrying their own health insurance, because the divorce decree essentially permits the parties to go their own way, with all the concomitant responsibilities that attach to those who are no longer married.
 {¶ 27} The court's findings on the relative financial positions of the parties suggest to us that it did not intend that Pastis continue to pay Ianiro's health benefits. The court noted that Ianiro had no impediments to obtaining gainful employment and had resisted finding employment during the course of the marriage. Moreover, the court noted that she left the marriage with assets of $145,000 (her premarital property) while Pastis left the marriage with just over $4,000, all of which was a premarital 401k plan. Finally, Pastis earned just over $32,000 per year, but had to pay child support from a previous relationship of $270 per month and listed living expenses of just over $1,200. This was in addition to court-ordered spousal support of $650 for an eight-month period. Pastis' finances were not robust, and the court would not have abused its discretion in finding that he had no obligation to continue to pay health benefits for Ianiro.
 {¶ 28} The assigned errors are overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant his costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court — Domestic Relations Division to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Cooney, J., and Karpinski, J., Concur.