JOURNAL ENTRY and OPINION
{¶ 1} Defendant-appellant Judith Koblitz ("wife") appeals from the order of the Cuyahoga Court of Common Pleas, Domestic Relations Division, that granted the complaint for divorce filed by plaintiff-appellee Kenneth Koblitz ("husband").
 {¶ 2} Wife claims the trial court abused its discretion in determining the division of the couple's assets, the amount of spousal support awarded to her, and the amount of attorney fees for which she was responsible. Upon a review of the record, this court cannot find any abuse of discretion in these matters. Therefore, the trial court's decisions are affirmed.
 {¶ 3} The following facts were adduced at trial.
 {¶ 4} The marriage of husband and wife took place in the State of Georgia on November 10, 1987. At that time, appellant/wife was fifty-two years old, and appellee/husband was forty-eight years old. It was the second marriage for each; wife had adult children from her previous marriage. Both parties were employed.
 {¶ 5} Upon moving to Ohio, the parties purchased for $112,000.00 a condominium located in Sagamore Hills, Ohio. In 1997, husband's father died. Husband inherited $217,218.75 from his father's estate, which he placed into a bank account titled in his name. A year later, in July 1998, after his mother's death, husband inherited another $369,428.90, which he placed in the same bank account. By this time, wife had ceased her outside employment.
 {¶ 6} In September 1998, husband transferred $75,000.00 of the money in his account into an account which was titled in wife's name. In November, husband additionally transferred $213,462.08 worth of securities and $17,749.10 worth of money market funds from his own account to the one titled in wife's name. Husband's investment counselor, Donald S. Jacobson, testified husband sought to divide the total of his inheritance money equally between the two accounts on the advice of his tax attorney to evade the potential of an estate tax.
 {¶ 7} Husband's employer provided benefits which included a company automobile and a credit card for expenses; husband and wife often took extra days from husband's business trips for their vacations. Husband obtained a Discover credit card for wife's personal use.
 {¶ 8} By the end of October 2001, husband and wife were experiencing marital difficulties. Husband moved out of the condominium. During a period of time when he and wife attempted to come to a divorce settlement, he eventually cohabited in Pepper Pike with a female companion. Wife continued to use the Discover card for her expenses, while husband continued to pay the couple's monthly bills.
 {¶ 9} In January and February 2002, husband transferred money remaining in his personal bank account and placed it into an account titled "The Kenneth A. Koblitz Trust." Similarly, in February 2002, wife transferred the money in the account titled in her name to an account titled "The Judith F. Koblitz Trust."
 {¶ 10} In June 2002, wife withdrew over $12,000.00 from the foregoing account for personal expenses. In August 2002, wife purchased a home in Pennsylvania, where one of her children lived. She used $96,480.00 in cash from the foregoing account to make the down payment on the property. Although the marital residence by that time had been listed for sale, it had not been sold; therefore, wife divided her time between the two homes.
 {¶ 11} In October 2002, husband filed his complaint for divorce together with a request for injunctive relief to prevent wife from withdrawing any further funds from the "trust" account titled in her name. Husband also closed the Discover card account which wife had been using, since by that time the balance on the account exceeded $13,000.00. On December 12, 2002 the trial court issued an order of spousal support pendente lite for wife. Wife claimed monthly expenses in the amount of $7939.00. Husband refused to pay this amount.
 {¶ 12} In March 2003, the parties came to a settlement concerning the monthly amount of temporary spousal support for wife. Husband agreed to pay directly to her $1250.00 per month, retroactive to December 12, 2002.
 {¶ 13} In July 2003, the matter proceeded to trial before a court magistrate. Husband submitted evidence that his assets included an IRA account in the amount of $34,655.52, a securities account in the amount of $41,862.34, a 401(K) account in the amount of $49,795.10, an annuity in the amount of $38,505.32, a variable annuity with a surrender value of $82,703.18, and that his yearly wage in 2002, not including extra benefits, was $78,849.75. Wife testified she received Social Security benefits in the amount of $882.00 per month.
 {¶ 14} In January 2004, the magistrate issued a decision in which she made the following pertinent determinations: 1) the de facto date of the termination of the marriage was the date of the order of temporary support, viz., December 12, 2002; 2) husband received the inheritance money from his parents and thereafter exerted control over the accounts, therefore, that money was his separate property and wife was required to reimburse him for the amount she appropriated as of August 2002, viz., $252,365.71; 3) the Sagamore Hills condominium was marital property, and, once sold, the proceeds from the sale of it should be divided equally; 4) since wife purchased the Pennsylvania property with husband's money, that property belonged to him until wife reimbursed husband the money she appropriated from him; 5) the down payment wife made on the Pennsylvania property, viz., $96,480.99, should be deducted from her half of the sale of the marital residence; 5) the retirement accounts should be divided equally; 6) wife was responsible to pay the debt on the Discover credit card incurred after December 12, 2002; 7) husband was required to pay the support arrearage he incurred between December 2002 and March 2003; 8) husband should pay spousal support to wife of $2250.00 per month for 60 months; 9) wife received title to the automobile; and, 10) the parties must pay their own attorney's fees.
 {¶ 15} Wife filed objections to the magistrate's decision. After permitting husband to file a reply to those objections, the trial court issued a journal entry in which only a few of wife's objections were sustained. Therefore, the trial court adopted the magistrate's decision with exceptions as follows: 1) wife should receive the $2250.00 per month spousal support directly from husband until further order of the court; and, 2) wife was granted, as additional spousal support from husband, attorney fees in the amount of $4000.00.
 {¶ 16} Wife presents thirteen assignments of error in this appeal, which will be combined for purposes of analysis when appropriate. Thus, wife's first, second, fourth, ninth and tenth assignments of error state as follows:
 {¶ 17} "I. It is contrary to law for the trial court to find that the funds transferred by the Plaintiff-Appellee to the Defendant-Appellant's account remained the separate property of the Plaintiff-Appellee when said funds had become the separate property of the Defendant-Appellant.
 {¶ 18} "II. The trial court erred in finding that the Pennsylvania home, purchased by the Defendant-Appellant following the parties' separation is the Plaintiff-Appellee's separate property.
 {¶ 19} "IV. It is contrary to law for the trial court to order Defendant-Appellant to reimburse the Plaintiff-Appellee from the proceeds of the sale of the marital property and that any shortfall be a credit against Plaintiff-Appellee's support obligation.
 {¶ 20} "IX. The trial court erred in requiring the Defendant-Appellant to reimburse the Plaintiff-Appellee $252,365.71. Said order is both contrary to law and is inequitable.
 {¶ 21} "X. The trial court erred in contingently ordering the Pennsylvania property to be sold."
 {¶ 22} In these assignments of error, wife complains that the funds husband transferred into her name in 1998 were a gift to her; therefore, the trial court improperly determined that she must repay husband the amount she appropriated. This court disagrees.
 {¶ 23} The trial court has wide discretion in deciding how to divide marital property. Cherry v. Cherry (1981),66 Ohio St.2d 348, paragraph two of the syllabus; Holcomb v. Holcomb (1989),44 Ohio St.3d 128. "Marital property" is defined as all income and appreciation on separate property due to labor, monetary, or in kind contribution of the spouses that occurred during the marriage. R.C. 3105.171(A). Marital property, however, does not include separate property of one of the parties, since separate property retains its own identity unless it becomes untraceable.Peck v. Peck (1994), 96 Ohio App.3d 731.
 {¶ 24} The evidence in this case proved that the money husband received from his parents was his inheritance. R.C.3105.171(H)(6)(a)(i); Grgurevic v. Grgurevic (Nov. 20, 1997), Cuyahoga App. No. 71765, citing Peck v. Peck, supra at 734. Wife did not provide any evidence to the contrary; rather, she claimed husband's decision to place half of the funds into an account titled in her name constituted a gift to her. The assessment of the credibility of the witnesses was a matter for the trial court acting through the magistrate. Thomas v. Thomas
(May 24, 2001), Cuyahoga App. No. 78294.
 {¶ 25} In order to establish this claim, wife was required to provide evidence of husband's intent, husband's delivery of the property to her, and husband's relinquishment of control over the property. Humphrey v. Humphrey, Ashtabula App. No. 2000-A-0092, 2002-Ohio-3121; George v. Zink (May 23, 1997), Lake App. No. 96-L-132. The evidence proved, however, that husband's reason for placing half of the money into wife's name was only to avoid tax liability on the total amount and that he continued thereafter to exercise exclusive control over both accounts.
 {¶ 26} The evidence further established that wife's transfer of the money, and her subsequent use of some of it, occurred only after the couple had separated, and that wife sought thereby to "punish" husband for abandoning the marriage. In the meantime, husband continued to support her. Since her use of husband's money thus was unauthorized, the trial court correctly decided she must return the portion she appropriated out of her share of the marital assets. Id.; Grgurevic, supra. Her appropriation of the money in the account, and her use of over $96,000.00 of it to purchase the Pennsylvania home, falls within this portion.
 {¶ 27} Accordingly, wife's first, second, fourth, ninth and tenth assignments of error are overruled.
 {¶ 28} Wife's third, fifth, seventh, eighth, eleventh and twelfth assignments of error state:
 {¶ 29} "III. The trial court erred in awarding spousal support of inadequate duration and amount, and in failing to consider an alimony trust or similar vehicle to adequately protect Defendant-Appellant's interest.
 {¶ 30} "V. The trial court erred in failing to order a distributive award.
 {¶ 31} "VII. The trial court erred in finding that the parties should divide the Discover bill as of December 12, 2002 when the Defendant-Appellant was without funds necessary for her own basic sustenance and was entirely cut off from any funds from the Plaintiff-Appellee. Such a finding rewards inappropriate self-help.
 {¶ 32} "VIII. The trial court erred in finding at page 13 of the Magistrate's Decision that the Defendant-Appellant's expenses for taxes, legal and accounting work and for an extended care policy are unreasonably high. Such a finding is capricious and without basis in logic or fact.
 {¶ 33} "XI. The trial court erred in allowing the Plaintiff-Appellee to pay his spousal support directly to the Defendant-Appellant.
 {¶ 34} "XII. The trial court erred in the finding that the termination date of the parties' marriage was December 12, 2002. The date of trial is the proper termination date."
 {¶ 35} In these assignments of error, wife contests the trial court's distribution of the marital assets and decisions on the equities of matters before it.
 {¶ 36} A trial court retains broad discretion in making a division of marital property in domestic relations cases; thus, its decisions will be upheld absent an abuse of discretion. Peckv. Peck, supra. Holcomb, supra. No abuse of discretion occurs where the record contains competent and credible evidence to support those decisions. Middendorf v. Middendorf,82 Ohio St.3d 397, 1998-Ohio-403.
 {¶ 37} In determining the division of marital property, the trial court must consider numerous factors, with the ultimate goal of equitably dividing the property. R.C. 3105.011; Johnsonv. Johnson, Cuyahoga App. No. 79497, 2002-Ohio-653. Moreover, R.C. 3105.07(A)(2)(b) permits the trial court to determine an equitable date for when the marriage actually terminated. Gouliav. Goulia (1994), 93 Ohio App.3d 653.
 {¶ 38} The record in this case supports the trial court's decisions on the matters wife raises in these assignments of error. Husband moved out of the marital residence in October 2001. Wife had retired by that time and received a Social Security payment of $882.00 per month. Although he lived separately, husband continued to pay the expenses on the marital home along with the balance on the Discover card, which wife continued to use for the purchase of personal items.
 {¶ 39} However, in February 2002, wife appropriated the funds from one of the inheritance accounts without consulting husband. She subsequently began to spend beyond her means. Previously, her credit card carried a balance of approximately $1000.00 per month. Despite husband's continuing payment of her ordinary expenses, by September 2002, wife had accumulated a balance on the credit card of over $12,000.00. Moreover, she used husband's inheritance money for additional personal expenses and to place a down payment on another home. Husband cancelled the credit card in November 2002. The trial court issued its first order of spousal support for wife on December 12, 2002.
 {¶ 40} At trial, husband testified that they lived comfortably and that his employer extended some additional benefits to him which he used in order to take occasional vacations with wife. Wife corroborated this testimony. She further admitted that husband always paid his bills.
 {¶ 41} However, wife sought support pendente lite in an unreasonable amount, therefore, husband balked at making those payments until the amount was adjusted by the parties' agreement in March, 2003. Although wife testified her health problems consisted of the common ones of high blood pressure and diabetes, she inflated her cost for her prescription medications, estimating them at "close to [$]5000" a year. She additionally indicated that after the separation, she decided husband was to blame for the marriage problems, and thought it was acceptable to make him pay for them.
 {¶ 42} From the foregoing, the trial court reasonably concluded: 1) the parties' marriage terminated on the date of the first order of support; 2) in order to maintain a similar standard of living, in addition to her social security, wife needed $2250.00 per month in spousal support from husband until further order of the court; and, 3) husband would make the payments directly to wife.
 {¶ 43} The trial court's decisions on the distribution of marital assets, spousal support, and the date of the termination of the marriage, therefore, find support in the record.
 {¶ 44} Accordingly, wife's third, fifth, seventh, eighth, eleventh and twelfth assignments of error are overruled.
 {¶ 45} Wife's sixth and thirteenth assignments of error state:
 {¶ 46} "VI. It is an abuse of discretion for the trial court not to have a hearing on interim counsel fees, and to deny fair compensation for counsel where said fees were deemed reasonable and the Plaintiff-Appellee has a significantly greater ability to pay.
 {¶ 47} "XIII. The trial court erred in allocating one-half of the costs of the proceedings to the Defendant-Appellant when she did not bring the within proceedings, her conduct was not causal to the divorce and the Plaintiff-Appellee is financially much better able to assume the costs."
 {¶ 48} Citing only R.C. 3105.18(H), wife challenges the trial court's division of the costs of the divorce proceeding, including the award to her of $4000.00 in attorney fees. She asserts, in essence, that husband should assume all of the costs of the divorce he sought.
 {¶ 49} The award of attorney fees and costs of the action in a divorce proceeding are matters committed to the trial court's sound discretion. Williams v. Williams (1996),116 Ohio App.3d 320, 328. The most important considerations for the trial court are the financial ability of the payor spouse, and whether a failure to award reasonable attorney fees will prevent either party from fully litigating rights and adequately protecting interests. Glick v. Glick (1999), 133 Ohio App.3d 821, 831.
 {¶ 50} In this case, the record supports a conclusion that although the marriage was irreparably broken by the summer of 2002, wife refused to agree to any efforts to dissolve it in a reasonable manner, thus prolonging the inevitable and incurring additional attorney fees. At trial, wife's testimony indicated the two of them did not live in a lavish manner during the marriage, but she admitted she saw no reason husband should not be made to pay for his indiscretions.
 {¶ 51} The trial court, faced with wife's attitude, nevertheless awarded wife $4000.00 for her attorney fees together with monthly spousal support of $2250.00 from husband. When added to wife's own personal annual income, the award amounts to approximately one-half of the amount husband earns per year from his salary. Thus, the trial court permitted wife fully to litigate and adequately protect her interests, while keeping in mind husband's ability to pay a portion of her attorney fees. It was equitable under the circumstances for the court also to determine each party should be responsible for half of the costs of the action.
 {¶ 52} Since the record fails to demonstrate the trial court abused its discretion in these matters, wife's sixth and thirteenth assignments of error also are overruled.
 {¶ 53} The trial court's order is affirmed.
It is ordered that appellee recover of appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas, Domestic Relations Division to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Celebrezze, Jr., P.J. and Sweeney, J. concur.